William D. WITTER, Plaintiff-Appellee,

v.

TRIUMPH SMOKES, INC., Defendant-Appellant.

No. 72-1657

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1972.

Ernest R. Reeves, Dallas, Tex., Ben Monning, Jr., Wills Point, Tex., McKenzie & Baer, Dallas, Tex., Wynne & Wynne, Wills Point, Tex., for defendant-appellant.

Jack D. Eades, Barefoot Sanders, Clark, West, Keller, Sanders & Ginsberg, Dallas, Tex., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

PER CURIAM:

Triumph Smokes, Inc. (Triumph) appeals from a summary judgment awarding William D. Witter $88,920.35, plus interest, in his action to enforce payment of two nonsubordinated debentures issued by Triumph. We affirm.

In his complaint Witter alleged that he is a resident of New York who on September 25, 1969, purchased the two debentures from Triumph, a Texas corporation, which at that time was named Bravo Smokes, Inc. The debentures were to mature on April 8, 1971 with 7% interest per annum from September 25, 1969. Witter alleged that he has made written demand for payment of the outstanding principal and interest due on the debentures, but that Triumph has refused to pay.

Triumph admitted the allegations of the complaint, but alleged that the consideration for the issuance of the debentures was unlawful. Triumph contends that Witter owned 667 shares of the corporation preferred stock and 12,540 shares of the corporation's common stock which Witter wanted the corporation to redeem. The corporation's board of directors voted to redeem the stock and issued the debentures to Witter in payment for the stock. Triumph further alleges that at the time of the stock purchase, and continuously since,

---

* Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

the corporation has had no earned surplus. Thus Triumph contends that the redemption was prohibited by Article 2.-03 of the Texas Business Corporation Act [1] and the payment of the debentures may not be enforced. Following a hearing on Witter's motion for summary judgment the court granted judgment for the amount of the debentures, plus interest.

On appeal Triumph contends that in these circumstances unrestricted earned surplus is the only source from which a Texas corporation may legally purchase its own stock upon resolution by its board of directors without shareholder consent. Triumph therefore asserts that the purchase transaction by the corporation was void. Witter in response argues that the issuance of the debentures is not void and that Triumph is es-

topped to deny the validity of the debentures.

■ An examination of the available Texas authority convinces us that without regard to the rights of corporate creditors who were not parties to the repurchase of Witter's stock, Triumph and its agents are estopped to deny the validity of these debentures.

The Supreme Court of Texas in Whitten v. Republic National Bank of Dallas, 397 S.W.2d 415 (Tex.1966) held that the use of corporate funds to pay a debt of an officer of the corporation in violation of the Texas Business Corporation Act is not an illegal, as distinguished from an *ultra vires*, act.

" . . . [T]he act is not against public policy since only the stockholders and creditors of the corporation,

---

1. Art. 2.03. Right of Corporation to Acquire and Dispose of Its Own Shares

A. A corporation shall not purchase directly or indirectly any of its own shares unless such purchase is authorized by this Article and not prohibited by its articles of incorporation.

B. A corporation may purchase its own shares to the extent of the aggregate of any unrestricted surplus available therefor and its stated capital when the purchase is authorized by the directors, acting in good faith to accomplish any of the following purposes:

(1) To eliminate fractional shares.

(2) To collect or compromise indebtedness owned by or to the corporation.

(3) To pay dissenting shareholders entitled to payment for their shares under the provisions of this Act.

(4) To effect the purchase or redemption of its redeemable shares in accordance with the provisions of this Act.

C. Upon resolution of its board of directors authorizing the purchase and upon compliance with any other requirements of its articles of incorporation, a corporation may purchase its own shares to the extent of unrestricted earned surplus available therefor if accrued cumulative preferential dividends and other current preferential dividends have been fully paid at the time of purchase.

D. Upon resolution of its board of directors and vote of the holders of at least two-thirds of all shares of each class, voting separately, authorizing the pur-

chase and upon compliance with any other requirements of its articles of incorporation, a corporation may purchase its own shares to the extent of the aggregate of unrestricted capital surplus available therefor and unrestricted reduction surplus available therefor.

E. To the extent that earned surplus, capital surplus or reduction surplus is used as the measure of the corporation's right to purchase its own shares, such surplus shall be restricted so long as such shares are held as treasury shares, and upon the disposition or cancellation of any such shares the restriction shall be removed pro tanto as to all such restricted surplus not eliminated thereby.

F. In no case shall a corporation purchase its own shares when there is a reasonable ground for believing that the corporation is insolvent, or will be rendered insolvent by such purchase or when, after such purchase, the fair value of its total assets will be less than the total amount of its debts.

G. An open-end investment company, registered as such under the Federal Investment Company Act of 1940, as heretofore or hereafter amended, if its articles of incorporation shall so provide, may purchase, receive, or otherwise acquire, hold, own, pledge, transfer, or otherwise dispose of its own shares, out of stated capital or any unrestricted surplus.

V.A.T.S.Bus.Corp. Act § 2.03 (1956).

not the public generally, have an interest in the matter. Is the act illegal because expressly prohibited by specific statute? We think not."

397 S.W.2d at 418. The court found the corporation estopped to assert that the payment was *ultra vires* because of the absence of fraud and because of the benefits received by the corporation from the payment.

The Texas Court of Civil Appeals in Lanpar Company v. Stull, 405 S.W.2d 235 (Tex.Civ.App.1966), writ ref. n. r. e., found a corporation similarly estopped to deny the validity of debentures issued in payment for the repurchase of the corporation's stock. The corporation sought to assert that the debentures there were issued in violation of Texas Business Corporation Act Art. 2.03(F). The court noted:

> "The foregoing section is to safeguard the rights of creditors. No creditor has here complained; the complaint is made by the defendant corporation who purchased the stock. In such situation the defendant is estopped to deny the validity of the transaction."

405 S.W.2d at 237.

■ We find no merit in Triumph's contention that we should reach a different result because it contends that the repurchase here violated Art. 2.03(A) and (C) which were not mentioned or discussed in *Lanpar*. Those sections, like Art. 2.03(F), are intended to safeguard the corporation's creditors. Triumph did not allege that any corporate creditors would be adversely affected by the payment of the debentures and no creditors sought to intervene. Accordingly the corporation is estopped to challenge the validity of the debentures which the corporation issued in payment for the repurchase of Witter's stock.

Triumph indicates in its reply brief that the corporation has now been placed in a Texas receivership, with the president of the corporation appointed as receiver. In determining the priority of the payment of Triumph's creditors those creditors who were not parties to the repurchase of Witter's stock will of course be free to seek priority on the basis of any alleged violation of Art. 2.03. We make no intimation as to the merits of any claim of priority which may be asserted by such creditors. That issue was not before the district court and it is not before this court. However Triumph and its agents are estopped to deny the validity of the debentures issued to Witter. The judgment of the district court is affirmed.